MASSEY v SCRIPTER

Docket No. 57612. Argued May 3, 1977 (Calendar No. 3).—Decided
    October 6, 1977.

    Lester and Wanda Massey, husband and wife, brought an action
        against Daniel Scripter for injuries sustained when a pickup
        truck driven by Scripter collided with the plaintiffs, who were
        riding on a tandem bicycle, in Ypsilanti Township. A jury in
        Washtenaw Circuit Court, Edward D. Deake, J., returned a
        verdict of no cause of action. The Court of Appeals, Bashara,
        P. J., and J. H. Gillis and M. F. Cavanagh, JJ., affirmed (Docket
        No. 21711). Plaintiffs appeal, asserting three errors in the
        instructions to the jury, and an error in excluding certain
        testimony. *Held:*

        1. An instruction to the jury that if the plaintiffs violated a
    statute by riding the bicycle on the wrong side of the road they
    would be required to use greater care than if they had kept to
    the proper side was erroneous. The standard of *conduct* re-
    quired may differ, depending on the activity, but the standard
    of *care* required does not change; it is that care which a
    reasonably prudent person would use under the circumstances.
    The necessity of greater or lesser care under the given circum-
    stances is a question for the trier of fact. The error in instruc-
    tion requires reversal.

        2. The plaintiffs' request for the standard jury instruction on
    last clear chance, SJI 14.01, was refused on the ground that
    their contributory negligence was concurrent with that of
    defendant. Whether the finding of concurrent negligence was
    error need not be decided because case law has superseded the
    doctrine of SJI 14.01. At the new trial the trial court must
    determine only whether the plaintiffs could fall into one of the

REFERENCES FOR POINTS IN HEADNOTES
[1] 57 Am Jur 2d, Negligence § 33 *et seq.*
[2] 40 Am Jur 2d, Highways, Streets, and Bridges § 603.
    57 Am Jur 2d, Negligence § 76.
[3] 57 Am Jur 2d, Negligence § 75.
[4] 57 Am Jur 2d, Negligence § 407.
[5] 57 Am Jur 2d, Negligence § 238 *et seq.*
[6] 58 Am Jur 2d, Negligence § 456 *et seq.*

categories to which last clear chance may appropriately be applied, and then instruct the jury accordingly; the jury will be asked to determine whether the plaintiffs qualify as either helpless or inattentive plaintiffs, and, if they do, decide under appropriate standards whether the defendant's conduct was the final and decisive factor in producing the injury.

3. The trial court excluded the plaintiffs' proffered opinion testimony of a state trooper that it is safer to ride a bicycle on the left side of the roadway facing oncoming traffic, even though so riding violates a statute. Violation of a statute creates a rebuttable presumption of negligence, which can be rebutted by any legally sufficient excuse, including the excuse that compliance with the statute involves a greater risk of harm to the actor. The existence of a legally sufficient excuse is a question of fact for the jury. The plaintiffs should be given the opportunity to present any competent evidence which a jury could interpret as creating excuse capable of rebutting the presumption of negligence. The Court expresses no view as to the admissibility of the trooper's testimony.

4. The trial court ruled as a matter of law that because of the nature of a tandem bicycle the plaintiffs were engaged in a joint venture so that any contributory negligence of one rider would be imputed to the other. This ruling was erroneous. Cases dealing with joint enterprise in the typical automobile driver-passenger relationship are ill-suited to evaluate the relationship of tandem bicycle riders, as is a case dealing with a motor scooter designed for one person on which two passengers were riding, each exclusively operating some of the controls. On a tandem bicycle, the front rider has all of the necessary controls in his power, while the second rider has no control over the steering and only limited braking power. The key question, whether the second rider had sufficient control over the bicycle to be actually negligent, is a question of fact for the jury. The jury should consider the negligence, if any, of each of the plaintiffs, and should not be instructed that the negligence of one rider is imputed to the other.

Reversed and remanded for a new trial.

64 Mich App 561; 236 NW2d 142 (1975) reversed.

1. NEGLIGENCE—STANDARD OF CARE—STANDARD OF CONDUCT.

The standard of *conduct* required of a party to a negligence action may differ, depending on the activity, but the standard of *care* required does not change; it is that care which a reasonably prudent person would use under the circumstances.

2. NEGLIGENCE—HIGHWAYS—STATUTES—VIOLATION—STANDARD OF
   CARE—INSTRUCTIONS TO JURY.

   An instruction to the jury that if plaintiffs violated a statute by
   riding a bicycle on the wrong side of the road they would be
   required to use greater care than if they had kept to the proper
   side was erroneous.

3. NEGLIGENCE—STANDARD OF CARE—QUESTION OF FACT.

   The necessity of greater or lesser care under the given circum-
   stances leading to a negligence action is a question for the trier
   of fact.

4. NEGLIGENCE—LAST CLEAR CHANCE—HELPLESS PLAINTIFF—INATTEN-
   TIVE PLAINTIFF—INSTRUCTIONS TO JURY.

   A trial court, in a negligence action in which the issue of last
   clear chance is raised, must determine only whether a plaintiff
   could fall into one of the categories to which the doctrine of
   last clear chance may appropriately be applied and then in-
   struct the jury accordingly; the jury will be asked to determine
   whether the plaintiff qualifies as either a helpless or inatten-
   tive plaintiff, and if he does, decide under appropriate stan-
   dards whether the defendant's conduct was the final and deci-
   sive factor in producing the injury.

5. NEGLIGENCE—STATUTES—VIOLATION—PRESUMPTIONS—QUESTION OF
   FACT.

   Violation of a statute creates a rebuttable presumption of negli-
   gence, which can be rebutted by any legally sufficient excuse,
   including the excuse that compliance with the statute involves
   a greater risk of harm to the actor; the existence of a legally
   sufficient excuse is a question of fact.

6. NEGLIGENCE—JOINT ENTERPRISE—IMPUTED NEGLIGENCE—TANDEM
   BICYCLE RIDERS—QUESTION OF FACT.

   Whether any negligence of the front rider on a tandem bicycle
   may be imputed to the second rider, who has no control over
   the steering and only limited braking power, is a question of
   fact; the jury should consider the negligence, if any, of each of
   the riders, and should not be instructed that the negligence of
   one rider is imputed to the other as a matter of law.

*Egnor & Hamilton* (by *Ronald W. Egnor* and
*Andrew S. Muth)* for plaintiffs.

*DeVine, DeVine, Kantor & Serr* for defendant.

Blair Moody, Jr., J. On July 24, 1972, the plaintiffs, Lester and Wanda Massey, were riding their newly purchased tandem bicycle in an easterly direction on the shoulder of the westbound lane of Holmes Road in Ypsilanti Township, Washtenaw County, so that they were riding against the traffic. Mr. Massey was on the tandem's front seat and Mrs. Massey on the tandem's rear seat. As they approached the intersection of Ridge and Holmes Roads, Lester Massey pulled out onto Holmes Road to avoid chuckholes in the road shoulder.

A pickup truck driven by the defendant, Daniel Scripter, was legally stopped at the stop sign on southbound Ridge Road, waiting for traffic to clear on Holmes Road. As the truck started moving to enter the intersection, the tandem bicycle reached the intersection and passed slowly in front of the pickup truck. Defendant testified that as soon as he saw the bicycle he slammed on his brakes. Although the truck was traveling at a maximum speed of six miles per hour, according to a witness's testimony, an impact occurred causing both plaintiffs to sustain injuries requiring medical treatment.

The plaintiffs sued to recover for the personal injuries sustained in the accident and a jury returned a verdict of no cause of action. The plaintiffs appealed, claiming three errors in the trial court's instructions to the jury, and a fourth error in the trial judge's exclusion of testimony concerning the safety aspects of riding bicycles against the traffic. The Court of Appeals affirmed the trial court as to all four issues. 64 Mich App 561; 236 NW2d 142 (1975). This Court granted leave on November 1, 1976. 397 Mich 888.

## I

Plaintiffs claim error in the trial judge's instruc-

tions as to the standard of care required of plaintiffs if they were riding their bicycle against the traffic in violation of MCLA 257.660; MSA 9.2360, which provides in part:

"Sec. 660. (a) Every person operating a bicycle upon a roadway shall ride as near to the right side of the roadway as practicable, exercising due care when passing a standing vehicle or one proceeding in the same direction."

Twice during the jury charge the trial judge referred to the plaintiffs' duty to use "greater care" if they violated the statute. First, in reading the defendant's claim to the jury, the trial court stated in part:

"It is the claim of the defendant that the plaintiff bicyclists had the same duties and obligations of *[sic]* motorists using a highway and in particular had a statutory obligation to operate their bicycle as closely as practicable to the right-hand edge of the roadway. It is further the claim of the defendant that the plaintiffs' violation of this statute constitutes negligence as a matter of law, and such negligence contributed to the cause of this accident, and that this accident would not have occurred had the plaintiffs been operating their bicycle in accordance with their statutory duties.

"It is further the claim of the defendant that *by reason of the fact that plaintiffs were operating their bicycle on the wrong side of the roadway they* assumed the risk of such an experiment and *had the duty to use greater care and watchfulness than if they had been on the right side of the roadway."* (Emphasis added.)

Later, after quoting the applicable state statute, the court instructed the jury that:

"I further instruct you, members of the jury, that if you find that the plaintiffs by their operation of the bicycle violated the laws of the roadway, operating the bicycle on the wrong side, *you are required to find that the said plaintiffs would be required to use greater care than if they had kept to the right side."* (Emphasis added.)

Under Michigan law, while the standard of conduct required may differ depending upon the activity one is involved in, the standard of care required does not change. The standard of care required of a party is always that which a reasonably careful person would do or would refrain from doing under the circumstances. *Frederick v Detroit,* 370 Mich 425; 121 NW2d 918 (1963).

One standard of care, that care which a reasonably prudent person would use under similar circumstances, is mandated in view of the medley of circumstances that may be presented to the trier of fact. While legal scholars and law school professors may use language intimating varying degrees of care, when charging a jury but a single standard of care is permissible. This rule was presented in *Felgner v Anderson,* 375 Mich 23, 30; 133 NW2d 136 (1965), where this Court stated:

"In *Frederick v Detroit,* 370 Mich 425, we held it would have been error to charge the jury that the defendant in a negligence case owed the plaintiff a 'high degree of care'. The measure of duty of a negligence-charged defendant is, as stated in *Frederick,* at page 431, 'reasonable care appropriate to the circumstances of the case, a standard of negligence which allows the fact finder to determine that some factual circumstances reasonably require greater or lesser diligence than do other circumstances in order to constitute reasonable or due care.' In a legal opinion addressed to bench and bar it is not inappropriate to speak in terms of degrees of care and caution, as a form

of legal shorthand; but when a jury of laymen is charged on the common law of negligence, the charge must be cast only in terms which a jury will understand impose a standard measured by that which a reasonably prudent man would regard as reasonably required by the specific factual circumstances of the case." (Emphasis deleted.)

This single standard of care is equally applicable to instructions concerning the contributory negligence of a plaintiff. See SJI 11.01, comment. We agree with Justice SOURIS' statement in the *Frederick* case that:

"[w]hen trial judges describe the standard of duty in terms of 'high care,' 'higher care,' 'highest care' or the like, they impinge upon the jury's function as finder of fact." *Frederick, supra,* 434.

Therefore, we hold that the trial judge erred in instructing the jury that if plaintiffs' operation of their bicycle violated the Michigan statute, they would be required to use *greater care* than if they had kept the bicycle as near to the right side of the road as practicable. Viewing the instructions as a whole, this charge stands out as clear judicial usurpation of the jury's function. The necessity of greater or lesser care under the given circumstances is a question for the trier of fact. The Court of Appeals decision is reversed and this cause is remanded to the trial court for a new trial.

## II

Although resolution of the first claimed error requires reversal, we deal now with three other alleged errors to avoid possible confusion at the new trial.

## A

Plaintiffs claim that the trial court erred in refusing to give the standard civil jury instruction on last clear chance, SJI 14.01, as requested. The SJI 14.01 Note on Use explains that the instruction may not be given if a plaintiff's negligence is concurrent with the negligence of a defendant. Consequently the issue of concurrent negligence has been treated as a question of law for the trial court. *Davidson v Detroit,* 307 Mich 420; 12 NW2d 413 (1943).

The trial judge denied plaintiffs' request for SJI 14.01, finding that the plaintiffs' contributory negligence continued until the point of impact and, thus, was concurrent with the negligence of the defendant. However, we need not decide whether the trial court erred in finding concurrent negligence. The vague and oft confusing categories of antecedent, concurrent and subsequent negligence are no longer applicable law. *Zeni v Anderson,* 397 Mich 117; 243 NW2d 270 (1976), effectively replaced SJI 14.01 with § 479 and, with one exception, § 480 of the 2 Restatement Torts, 2d.[1]

---

[1] "Section 479. Last Clear Chance: Helpless Plaintiff.

"A plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may recover for harm caused thereby if, immediately preceding the harm,

"(a) the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care, and

"(b) the defendant is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm, when he

"(i) knows of the plaintiff's situation and realizes or has reason to realize the peril involved in it or

"(ii) would discover the situation and thus have reason to realize the peril, if he were to exercise the vigilance which it is then his duty to the plaintiff to exercise." 2 Restatement Torts, 2d, § 479, p 530.

"Section 480. Last Clear Chance: Inattentive Plaintiff.

"A plaintiff who, by the exercise of reasonable vigilance, could discover the danger created by the defendant's negligence in time to avoid the harm to him, can recover if, but only if, the defendant

"(a) knows of the plaintiff's situation, and

We do not decide the applicability of the Restatement sections to the present facts. Whether a last clear chance instruction should be given at the new trial will be determined pursuant to the rule established in *Zeni:*

"The trial court must determine only whether plaintiff could fall into one of the categories to which last clear chance may be appropriately applied, and then should instruct the jury accordingly.

"The jury will be asked to determine if plaintiff falls within one of the two Restatement categories, that of helpless or of inattentive plaintiff, and then, to decide if defendant's conduct meets the appropriate standard which would give plaintiff the benefit of the last clear chance doctrine." *Zeni, supra,* 157.

The trial judge determines whether there is evidence indicating that the plaintiffs could fall into one of the two Restatement categories. If the trial court finds such evidence, the court instructs the jury to consider the evidence and determine if the plaintiffs qualify as either helpless or inattentive plaintiffs and, if so, decide pursuant to the Restatement standard whether defendant's conduct was the final and decisive factor in producing the injury.

### B

Plaintiffs sought to introduce the opinion testimony of a state trooper that it is safer to ride a bicycle on the left side of the roadway facing oncoming traffic, even though such conduct vio-

---

"(b) realizes * * * that the plaintiff is inattentive and therefore unlikely to discover his peril in time to avoid the harm, and

"(c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm." 2 Restatement Torts, 2d, § 480, p 535.

lates a Michigan statute. Defendant objected to the admission of such testimony and the trial judge excluded the proffered testimony without stating his reason on the record.

The *Zeni* case resolves the question of the admissibility of such testimony.

The plaintiff in *Zeni* was walking on a well-used pedestrian snow path in the roadway, with her back to oncoming traffic. The defendant claimed that Ms. Zeni's failure to use the sidewalk constituted contributory negligence as it violated MCLA 257.655; MSA 9.2355, which requires:

"Where sidewalks are provided, it shall be unlawful for pedestrians to walk upon the main traveled portion of the highway. Where sidewalks are not provided, pedestrians shall, when practicable, walk on the left side of the highway facing traffic which passes nearest."

Justice WILLIAMS, speaking for the majority in *Zeni,* considered the effect of an alleged violation of a statute by a party and stated the Michigan rule as follows:

"We have seen, therefore, that while some of our Michigan cases seem to present negligence per se as an unqualified rule, the fact of the matter is that there are a number of qualifications which make application of this rule not really a per se approach at all. Not only must the statutory purpose doctrine and the requirement of proximate cause be satisfied, but the alleged wrongdoer has an opportunity to come forward with evidence rebutting the presumption of negligence.

"An accurate statement of our law is that when a court adopts a penal statute as the standard of care in an action for negligence, *violation of that statute establishes a prima facie case of negligence, with the determination to be made by the finder of fact whether the party accused of violating the statute has established a*

*legally sufficient excuse.* If the finder of fact determines such an excuse exists, the appropriate standard of care then becomes that established by the common law. Such excuses shall include, but shall not be limited to, those suggested by the Restatement Torts, 2d, § 288A, and shall be determined by the circumstances of each case." *Zeni, supra,* 143. (Emphasis added.)

Thus, a party's violation of a statute creates a rebuttable presumption of negligence. This presumption can be rebutted by any legally sufficient excuse, including the excuse that compliance with the statute involves a greater risk of harm to the actor. 2 Restatement Torts, 2d, § 288A(2)(e), p 33.

We do not decide whether the present plaintiffs, Lester and Wanda Massey, had a legally sufficient excuse for violating MCLA 257.660; MSA 9.2360. Similarly we express no view as to the admissibility of the proposed testimony of Trooper Ackerly as proffered. Nevertheless, plaintiffs should be given the opportunity to present any competent evidence which a jury could interpret as creating an excuse capable of rebutting the presumed negligence.

## C

"[B]ased on the nature of a tandem bicycle", the trial judge ruled as a matter of law that the plaintiffs were involved in a joint venture and charged the jury:

"I instruct you, members of the jury, that at the time of this accident the plaintiffs were engaged in a joint venture. If you find that either of the plaintiffs were *[sic]* negligent, that such negligence was a proximate cause of the accident then both plaintiffs should be barred from recovery, and your verdict would be for the defendant."

As a result of this ruling the contributory negligence, if any, of the front seat rider, Lester Massey, would be imputed to the rear seat rider, Wanda Massey.

The unique facts of this case render inapplicable two cases cited by counsel and the Court of Appeals. The case of *Boyd v McKeever,* 384 Mich 501; 185 NW2d 344 (1971), stated a three-pronged test for establishing a joint enterprise between a driver and a passenger of an automobile. However, we are not dealing with the typical automobile driver-passenger relationship as we were in *Boyd.* We find the *Boyd* test ill-suited to evaluate the relationship of tandem bicycle riders.

Nor do we find the present facts indistinguishable from those of *Flager v Associated Truck Lines, Inc,* 52 Mich App 280; 216 NW2d 922, *lv den,* 392 Mich 810 (1974). In the *Flager* case two girls were riding on a motor scooter designed for one person when the scooter went out of control, colliding with a truck. One girl stood on the front of the scooter operating the throttle and steering mechanisms while the other girl sat on the seat operating the brakes. The *Flager* trial judge ruled that as a matter of law both girls could be considered operators of the motor scooter and that the negligence of one operator could be imputed to the other operator.

In *Flager,* with the girls positioned at the controls as they were, both girls were needed to operate the vehicle. The girls had literally taken the duties of a scooter driver and divided them equally, two individuals acting as one driver or operator. Each girl had a function absolutely necessary to the operation of the motor scooter.

The *Flager* facts are distinguishable from those

of the present case. The design features of a tandem bicycle differ from those of a motor scooter. The tandem is designed to permit use of one vehicle by two riders. Nevertheless, two riders are not necessary for the vehicle to be operative, as the front rider has all of the necessary controls in his power. The front rider can steer, pedal and brake the bicycle without a second rider. Although the person on the second tandem seat can pedal, supplying power to propel the bicycle forward, the second rider has no control over the steering and only limited braking power.

Because of the unique characteristics of a tandem bicycle, we find that it was error for the trial judge to rule as a matter of law that the Masseys were involved in a joint venture. The key question, whether Mrs. Massey had sufficient control over the tandem to be negligent in her own right, is a question of fact for the jury. A jury could find that Mr. Massey was contributorily negligent or that Mrs. Massey was contributorily negligent, or that both plaintiffs were contributorily negligent or that neither was.

Under these unprecedented facts, the trier of fact at the new trial should consider the negligence, if any, of each of the plaintiffs, and should not be instructed that the negligence of one rider is imputed to the other, thereby barring recovery.

The trial court and Court of Appeals are reversed. The case is remanded to the trial court for a new trial, not inconsistent with this opinion. Costs to plaintiffs.

KAVANAGH, C. J., and WILLIAMS, LEVIN, COLEMAN, FITZGERALD, and RYAN, JJ., concurred with BLAIR MOODY, JR., J.